**The below described is SIGNED.**

**Dated: March 06, 2009**

**JUDITH A. BOULDEN
U.S. Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| In re: | Case No. 08-27768 |
|---|---|
| CARLSBAD DEVELOPMENT I, LLC, | Chapter 11 |
| Debtor. | |

**MEMORANDUM DECISION**

Before the Court is BRT Funding, LLC's Motion for Stay Relief Pursuant to 11 U.S.C. § 362(d) (Motion).[1]  The Motion seeks stay relief under § 362(d)(2) and (3) of the Bankruptcy Code, and the Court already determined on January 8, 2009 that this Debtor is a single asset real estate debtor under § 101(51B).

This is a core matter, and the Court may enter a final judgment.  The Court received evidence and heard argument and took the matter under advisement.  The Court has now considered the evidence properly before it, has judged the credibility of the witnesses, and has made an independent inquiry into applicable case law.  Now being fully advised, the Court hereby issues the following Memorandum Decision.

---

[1]  Future statutory references are to title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), unless otherwise noted.

## I. FACTS

For purposes of this Motion, the parties have stipulated to the existence, validity, and perfection of BRT's first-position security interest in effectively all of the Debtor's assets including a 402-unit apartment complex in Mesa, Arizona. The parties also stipulate that the debt owing to BRT is no less than $32.6 million and that the BRT obligation has been guaranteed by Gregory Hales, Richard Bennion, Randy Krantz, and Tad Gygi.[2] The Debtor further alleges that IDB Investments, LLC holds a second-position security interest in the property securing an obligation of no less than $3 million. Therefore, the total outstanding secured debt on the property is no less than $35.6 million.

BRT offered the expert opinion testimony and Plan Feasibility Report (Report) of MAI-certified appraiser Robert Dietrich in which he concludes that the current highest and best use of the property is as an apartment complex and values the property at $20 million as of February 2009 — a decrease of $5.5 million since his Initial Report in June 2008. The Debtor offered several different valuations of the property through Messrs. Hales, Bennion, and Krantz on the basis of an assumed PUD conversion. Mr. Hales testified to a range of values between $34 million and $42 million, which he arrived at by simply multiplying purported unit prices by the number of units in the project. Mr. Bennion testified to the same range in his deposition but just a week later revised that value upward to $50 million, which he arrived at by comparing rent versus mortgage payments and reviewing unspecified comparables. And Mr. Krantz testified to

---

[2] Carlsbad Development, LLC is the 40% owner of Carlsbad Development I, LLC, the Debtor in this case. Mr. Hales is the 100% owner of Carlsbad Development, LLC and is the managing member of the Debtor. Mesa Glen, LLC owns the other 60% of the Debtor, and Mesa Glen is owned by Messrs. Bennion, Krantz, and Gygi.

a value of between $40 million and $41 million, which he arrived at in a similar fashion to Mr. Bennion along with recent conversations with a couple of local developers.

The evidence establishes that the Debtor intended to convert the property to either condos or preferably a PUD essentially from the time that the property was purchased in March 2007, and BRT's original loan was indeed a short-term bridge facility. But despite nearly two years of extensive efforts, the Debtor has been unsuccessful in either appreciably moving the project forward or otherwise addressing the outstanding debt. Although Messrs. Bennion and Krantz have substantial experience in certain types of real estate financing, Messrs. Hales, Bennion, and Krantz collectively and at best have exceedingly minimal experience with bankruptcy and debtor-in-possession financing.[3]

Finally, the plan timely filed by the Debtor on February 9, 2009 allows the Debtor, at its discretion, to choose between refinancing the secured debt, selling the property, or locating new investors for the project even though refinancing appears to have been the main focus of the Debtor's efforts to date. The plan itself provides no specific deadlines or default provisions, although the Debtor did assert through counsel at the hearing that an amended plan would include a six-month post-confirmation period to perform one of the plan options with an estimated confirmation hearing in June 2009.[4]

---

[3] Mr. Bennion testified that he has assisted at most a few debtors as "a broker just trying to assist them to complete their project[s]." Mr. Krantz asserted that since his deposition in February, he has spoken with someone "that is interested in doing a debtor-in-possession loan."

[4] In Mr. Bennion's lay opinion, it would generally take around six months to obtain financing commitments like the ones needed in this case although he believed that it would take about four months to close a particular loan with Remington Commercial Advisors given the amount of due diligence that Remington has done to date. He also testified that the current market for Arizona real estate financing is "about as bad as it gets." In Mr. Krantz's lay opinion, it would take approximately 90 to 120 days to secure a $35 million financing commitment although the largest loan he has ever obtained

## II. DISCUSSION

**A.      § 362(d)(2)**

Under § 362(d)(2) of the Bankruptcy Code, stay relief is appropriate if the Debtor has no equity in the property and "such property is not necessary to an effective reorganization." "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be a 'reasonable possibility of a successful reorganization within a reasonable time," although the Court is not to conduct a mini confirmation hearing at this stage of the case.[5]  BRT has the burden of proof on the issue of equity, and the Debtor has the burden of proof on all other issues.[6]

In both his testimony and Report, Mr. Dietrich credibly explained the foundations of his opinions, his methodology, and his conclusions on valuation. The Debtor criticized Mr. Dietrich's testimony and Report in several respects including the alleged failure to consider a PUD rather than just a condo conversion, the availability of favorable FHA financing for potential buyers, benefits for potential buyers from the American Recovery and Reinvestment Act (ARRA), the ability to turn current renters into buyers, and the state of the Mesa housing

---

or closed was approximately $30 million.

[5]      *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original); *see also Sumitomo Trust & Banking Co., Ltd., Los Angeles Agency v. Holly's, Inc. (In re Holly's, Inc.)*, 140 B.R. 643, 700-01 (Bankr. W.D. Mich. 1992) (describing the "moving target burden of proof" for § 362(d)(2)(B) determinations depending on the point in the case and indicating that the "less strenuous" *Timbers* plausibility standard is appropriate "[a]t the early stages of a bankruptcy case").

[6]      11 U.S.C. § 362(g)(1) and (2).

market. But the factual testimony and lay opinions of Messrs. Hales, Bennion, and Krantz are neither sufficient nor sufficiently credible to refute Mr. Dietrich's testimony and Report.

Even if the Debtor's assertions about current FHA financing options and the ARRA were true, there is no credible evidence to plausibly link these assertions with the Debtor's particular project, the current renters at the property, or the Mesa housing market generally. Indeed, the Analysis of Ownership Benefit (AOB) prepared by Mr. Dietrich indicates that it would be slightly *more* expensive to buy a unit in the converted property than to rent an apartment in the existing complex. And the Debtor's highly optimistic projections as to future absorption rates and cash flows, which contained substantial and fundamental errors in their original form, do not credibly refute Mr. Dietrich's testimony, Report, or AOB.

Likewise, the wide disparities in the valuation testimony of Messrs. Hales, Bennion, and Krantz draw their valuations into serious question, and a value as low as $34 million would clearly mean that the property was worth less than the stipulated amount of the existing secured debt without even considering the additional costs of any refinancing loans beyond the exact amount of that debt. The valuation methodologies employed by Messrs. Hales, Bennion, and Krantz are equally open to serious question and do not credibly refute Mr. Dietrich's expert analysis. Accordingly, the Court concludes that BRT has met its burden by a preponderance of the evidence of showing the Debtor's lack of equity in the property under § 362(d)(2)(A).

As for the proposed plan, the same findings that support a conclusion of no equity also support a conclusion that a successful reorganization is not reasonably in prospect within a reasonable time. In support of its plan, the Debtor only offers allegations as to why financing has previously been unavailable and preliminary expressions of interest in financing by Remington

Commercial Advisors and Wall Street Funding Group. To the extent that these expressions of interest are even still in effect, they are far from hard funding commitments and are subject to further review and due diligence by the proposed lenders which the Debtor apparently believes may take up to six months after confirmation. But with a property value of $20 million, the Debtor has no realistic hope of obtaining even $35.6 million in financing to cover the stipulated amount of the existing secured debt.

Moreover, the "plan" is not really even a plan at all. It allows the Debtor unfettered discretion to choose between three different options of refinancing the secured debt, selling the property, or locating new investors for the project. It contains no specific deadlines or default provisions as drafted, and modifying it to allow a six-month post-confirmation period for performing one of the options is no answer. The evidence and argument are clear that the Debtor, even after almost two years, simply wants more time — more time to obtain financing, more time for the market to rebound, and more time under the protection of the automatic stay. But even if the Debtor were only requesting a few months from today rather than six months after confirmation, that much more time is simply unreasonable in light of the valuation and financing evidence presented to the Court. Accordingly, the Court concludes that the Debtor has not met its burden by a preponderance of the evidence of showing that a successful reorganization is reasonably in prospect within a reasonable time under § 362(d)(2)(B). Stay relief in favor of BRT is therefore appropriate under § 362(d)(2).

**B.     § 362(d)(3)**

Alternatively, stay relief is also appropriate under § 362(d)(3)(A) which requires that the Debtor's plan have "a reasonable possibility of being confirmed within a reasonable time." Although § 362(d)(3)(A) speaks in terms of confirmation rather than reorganization, "the standard for interpreting § 362(d)(3)(A) is nearly identical to the standard for determining whether or not property is 'necessary for an effective reorganization' in § 362(d)(2)(B)."[7] And "[t]he purpose of § 362(d)(3) [with its shortened time frame] is to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully."[8] To prove a reasonable possibility of confirmation within a reasonable time, the Debtor must at least show that "the proposed . . . plan has a realistic chance of being confirmed [and] is not patently unconfirmable" although "adjudicating a relief from stay motion under § 362(d)(3)(A) is not to be a mini confirmation hearing."[9] Although the Debtor clearly and sincerely wishes for this project to succeed, for the reasons already stated above, the proposed plan is both unconfirmable and has no realistic chance of being confirmed within a reasonable time — particularly in light of the fact that this is a single asset real estate case.

---

[7]     *In re Windwood Heights, Inc.*, 385 B.R. 832, 837-38 (Bankr. N.D. W.Va. 2008).

[8]     3 COLLIER ON BANKRUPTCY ¶ 362.07[5][b] (15th ed. rev. 2008).

[9]     *Windwood Heights*, 385 B.R. at 838.

### III. CONCLUSION

Along with the rest of the country, the Debtor clearly hopes for improvement in the real estate and credit markets. But the Court must make its determinations on the evidence properly before it, and the evidence in this case weighs strongly in BRT's favor. For the reasons stated above, BRT has met its burden under § 362(d)(2)(A) of showing the Debtor's lack of equity in the property while the Debtor has not met its burden under § 362(d)(2)(B) of showing that a successful reorganization is reasonably in prospect within a reasonable time. The Debtor has also not met its burden under § 362(d)(3)(A) of showing that its plan has a reasonable possibility of being confirmed within a reasonable time. Accordingly, the Motion is GRANTED. The Court will issue a separate Order to this effect.

---------------------------------------------END OF DOCUMENT---------------------------------------------

_____ooo0ooo_____
SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Carlsbad Development I, LLC
P.O. Box 71494
Salt Lake City, UT  84171
    *Debtor*

Anna W. Drake
**Anna W. Drake, P.C.**
175 South Main Street, Suite 1250
Salt Lake City, UT  84111
    *Counsel for Debtor*

Robert J. Miller
Kyle S. Hirsch
**Bryan Cave LLP**
One Renaissance Square
Two North Central Avenue, Suite 2200
Phoenix, AZ  85004
    *Counsel for BRT Funding, LLC*

Annette W. Jarvis
Steve Strong
Benjamin J. Kotter
**Dorsey & Whitney LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
    *Local Counsel for BRT Funding, LLC*

John T. Morgan
U.S. Trustee's Office
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, UT  84111